of the boat, so strained the boat as to cause a leak which did not develop until six hours afterwards, and then almost instantly destroyed the barge. At the time the boat sank there was nearly high tide, and, concededly, she had been free from the bottom for some five hours; and no leak whatever had developed up to the time of the cracking sound, five or ten minutes before she went down.

One of the plaintiffs testified that he never knew a boat to go to pieces from a leak, and the master testified that he could not tell how the disaster occurred. It was concededly a calm night, and the water was smooth, excepting the swell from the passing tugs, which was not sufficient to rock the barge when the master tried her pumps, just before the disaster.

The burden of proof was upon the plaintiffs to show by a fair preponderance of evidence that the disaster arose from some of the perils insured against, and that it did not occur by reason of any inherent defects and other unseaworthiness, as among the excepted risks. Berwind et al. v. Greenwich Ins. Co., 114 N. Y. 231, 21 N. E. 151.

The overwhelming preponderance of evidence was to the effect that the barge was structurally too weak to sustain such a load, and that its collapse was a result thereof; and we think that the verdict of the jury was contrary to the evidence, and that a new trial should be granted.

The judgment and the order denying the motion made at the trial, upon the minutes, to set aside the verdict and for a new trial, should be reversed, and a new trial granted, with costs to abide the event. All concur.

---

## WEINSTEIN v. WEBER.

(Supreme Court, Appellate Division, First Department. January 23, 1903.)

1. WILL—LIFE ESTATE—POWER OF SALE—REMAINDER—DOWER—CONVEYANCE.
   A testator devised to a woman he afterwards married, and who survived him as his widow, a life estate in one-third of his realty, with power of sale, and with remainder over in two-thirds to her children. After his death she executed a conveyance by which she "granted, remised, released, and quitclaimed" to one of the executors under the will all her "right, title, interest, and dower" to testator's estate. In the acknowledgment the conveyance was referred to as a "release of dower." *Held*, that by this conveyance the widow did not execute her power of sale so as to convey the remainder.

2. SAME—LIFE ESTATE—DOWER—POWER OF SALE.
   Upon testator's death the widow had a life estate in one-third of his realty and a power of sale under the will; also her dower right in his realty.

3. SAME—LIFE ESTATE—POWER OF SALE.
   Under this will the widow's life estate was an independent and distinct interest in testator's realty, irrespective of her power of sale.

4. CONVEYANCE—POWER OF SALE.
   The conveyance made by the widow did not by its terms refer to the power of sale, nor recite the same, and was not a valid execution of the power of sale.

5. WILL—DOWER—POWER OF SALE.
   The dower right of the widow was an independent interest, separate from the power of sale.

6. SAME—LIFE ESTATE—POWER OF SALE.
    The widow's life estate was an independent interest, separate from her power of sale.
7. WILL—REMAINDER.
    Upon the death of testator, the children of his widow had a vested remainder in two-ninths of his estate, after the termination of the widow's life estate.

Appeal from Special Term, New York County.

Action by Rachel Weinstein against Joseph Weber to recover money paid and expenses incurred under a contract for the purchase of real estate. Judgment for plaintiff, and defendant appeals. Affirmed.

The following is the opinion of TRUAX, J., at Special Term:

"The above-entitled action having come on for trial before me, one of the justices of this court, at a Special Term, Part 3, held in and for the county of New York, in the county courthouse in said county, on the 7th and 10th days of March, 1902, without a jury, after hearing the proofs of the respective parties, I do now make the following findings of fact:

"(1) That on June 14, 1898, the defendant claimed to be the owner in fee and possessed of the premises situate in the borough of Manhattan and city of New York, and more particularly described as follows, to wit: All those two certain lots of land and the buildings thereon erected, situate on the easterly side of Lewis street, between Rivington and Delancey streets, in the borough of Manhattan, city, county, and state of New York. Said lots, taken together, are bounded and described as follows: Commencing at a point on the easterly side of Lewis street one hundred (100) feet northerly from the northeasterly corner of Delancey and Lewis streets; running thence northerly, along the easterly side of Lewis street, fifty (50) feet; thence easterly one hundred and one (101) feet and four (4) inches; thence southerly fifty (50) feet; and thence westerly one hundred and one (101) feet ten (10) inches, to easterly side of Lewis street, at the point or place of beginning—be said several dimensions and distances more or less; said lots being known as and by the street numbers 50 and 52 Lewis street, and also known on a map on file in the register's office of the city and county of New York, entitled 'Map of Lots of Ground Belonging to the Estate of William Edgar, situate in the Thirteenth Ward of the city of New York, surveyed September, 1829, by Daniel Ewen, city surveyor, as lots. Nos. 33 and 34.'

"(2) That the plaintiff and the defendant on the 14th day of June, 1898, entered into an agreement in writing, bearing date that day, wherein and whereby the defendant undertook and agreed to sell to the plaintiff said premises. in consideration of the plaintiff's paying the defendant therefor the sum of $28,775, as follows: $1,000 at the execution and delivery of the agreement, the receipt of which was therein and thereby acknowledged; $2,500 in cash, or a duly certified check for that amount, at the time fixed for the delivery of the deed; $7,000 by accepting said deed subject to three certain mortgages, liens on the premises, payable in currency, viz., one for $1,000, one for $2,000, and one for $4,000, with interest at the rate of 5 per cent. per annum, payable semiannually, said mortgages being then past due; and $18,275 by the said plaintiff executing and delivering to the defendant her bond, secured by a purchase-money mortgage on said premises, payable on or before two years, with interest at the rate of 5 per cent. per annum, payable semiannually. Said agreement further provided that the defendant would, upon receiving such payment in the manner and at the time above mentioned, at his own proper cost and expense, execute, acknowledge, and deliver to the plaintiff or her assigns a full covenant warranty deed for the conveying and assuring to her or them of the fee simple of said premises free and clear of all incumbrances except the said mortgages and the tenancies of the present tenants, all of which were monthly tenancies, and that such deed should be delivered at the office of Lewis S. Goebel, 41 Park Row, Times Building, in the city of New York, on August 1, 1898, at 12 o'clock.

"(3) That the day for the completion of the aforesaid contract was from

the said 1st day of August, 1898, from time to time duly adjourned, by the agreement of both plaintiff and defendant, to February 27, 1899, at 12 o'clock noon. at the said office of the said Lewis S. Goebel, and on the said 27th day of February, 1899, at 12 o'clock noon, at the said office of the said Lewis S. Goebel, the plaintiff tendered performance of the provisions of the contract on her part to be performed, and the defendant tendered to the plaintiff a full covenant warranty deed, executed and duly acknowledged by himself and wife, which purported to convey to the plaintiff the fee simple of the said premises free and clear of all incumbrances, except said mortgages thereon, aggregating $7,000, and the tenancies of the monthly tenants in said premises. The plaintiff's counsel, however, refused to accept the said deed so tendered by the defendant on the ground that the defendant did not have title in fee simple to said premises free and clear of all incumbrances except said mortgages and said tenancies, and that defendant's title was unmarketable and defective, and that the defendant had never acquired the interest in said premises of one Julia Bain, formerly Julia Goetz, a daughter of Walli Goetz Brown, nor had the defendant acquired the interest in said premises of one Julia Virginia Goetz, the grandchild of the said Walli Goetz Brown, and the daughter of one Max Goetz, the son of the said Walli Goetz Brown, each of whom the plaintiff's counsel claimed had a vested interest in said premises under the will of Adolphus Brown, the former owner thereof, and that Walli Goetz Brown had not made a valid exercise or disposition of the power of sale given to her under the will of Adolphus Brown, deceased, and that the instrument signed by the said Walli Goetz Brown, or Walli Brown (they being the same person), set forth in paragraph eighth hereof, was not properly acknowledged except as a release of dower.

"(4) That the defendant derived title to the premises known as No. 50 Lewis street, in the borough of Manhattan and city of New York, a portion of the premises in question, through the deed of one Robert Maclay and wife to the said Adolphus Brown and one Felix Brown, and to the premises No. 52 Lewis street, in said borough and city, the remaining portion of the premises in question, through a deed from one Daniel M. Edgar and wife to the said Adolphus Brown and Felix Brown; that in both of the two deeds of Daniel M. Edgar and wife and Robert Maclay and wife, as aforesaid, the grantees are described as Adolphus Brown and Felix Brown only, and nothing appears upon the face of either of these deeds to indicate that the property was purchased with copartnership funds, or that it was to be used for copartnership purposes.

"(5) That the said Adolphus Brown died at the city of New York on March 10, 1875, leaving him surviving his widow, Walli Brown, formerly Walli Goetz, and three minor children, Rosa Brown, Auguste Brown, and Christina Brown, and leaving a last will and testament, which disposed of his property in the following language: 'First. I give, devise and bequeath unto my friend, Walli Goetz, all my furniture and household articles, and also one-third of the rest, residue and remainder of my estate, real, as well as personal, to have and to hold the same unto her during her lifetime, and after her death to be divided in such a manner that two-thirds thereof shall go to her children, and one-third thereof to my children. I expressly provide, however. that my said friend shall have possession of the property so given, devised or bequeathed to her, and be entirely free in administration of the same, with full power to sell and dispose of the same, or any part thereof, and shall not be required to give any security whatsoever. Secondly. I give, devise and bequeath the remaining two-thirds of all the rest, residue and remainder of my property, real as well as personal, to my children. to be divided between them, share and share alike; and I hereby provide that the property hereby devised or bequeathed to my children shall be converted into money, and the share of each child be safely invested in good security during his or her minority, and the interest or income derived therefrom to be applied to the education and maintenance of my said children until they have become of age respectively.'

"(6) That in and by said last will and testament John F. Miller, Philip Michel, and the said Felix Brown were named as executors thereof; that said last will and testament was duly proved as a will of personal property

only on April 5, 1875, and recorded in the office of the surrogate of the county of New York, and letters testamentary were thereafter duly issued to the said John F. Miller, Philip Michel, and Felix Brown, and they thereafter duly qualified and entered upon the discharge of their duties as such executors.

"(7) That the Walli Goetz mentioned and described in said will, prior to the death of the said Adolphus Brown, and after the execution of the said will by the said Adolphus Brown, intermarried with the said Adolphus Brown. That at the time of the marriage of the said Walli Goetz to the said Adolphus Brown, and at the time of the execution of the said will by the said Adolphus Brown, said Walli Goetz had two children, one Julia Goetz, who subsequently married one Robert B. Bain, and one Max Goetz. The said Max Goetz died intestate on October 3, 1893, before his mother, the said Walli Goetz Brown, and leaving one child, a daughter, Julia Virginia Goetz, who was eighteen years old in the month of December, 1901. That said Walli Goetz Brown died in the city of New York in 1897. That no children or issue were born of the marriage between the said Adolphus Brown and the said Walli Goetz.

"(8) That on May 9, 1876, the said Philip Michel and John F. Miller, as such executors of the last will and testament of Adolphus Brown, deceased. executed a certain conveyance in writing, bearing date that day, and duly acknowledged by the said Philip Michel and John F. Miller, as such executors, on the 16th day of June, 1876, which deed, for the consideration therein named of the sum of $4,500, purported to convey to the said Felix Brown all the undivided interest in the said premises in question herein which was owned by the said Adolphus Brown in his lifetime. That at the time when the said deed was executed and delivered by the said Philip Michel and John F. Miller such executors as aforesaid, to the said Felix Brown, there was indorsed on said deed the following:

" 'Know all men by these presents, that I, Walli Brown, widow of Adolphus Brown, deceased, in consideration of fifteen hundred dollars to me paid by the within named Felix Brown, do grant, remise, release and quitclaim unto the said Felix Brown all my right, title, interest and dower in and to the within described premises. In witness whereof I have hereunto set my hand and seal this ———— day of June, in the year one thousand eight hundred and seventy-six.                        Walli Brown. [L. S.]

" 'Signed, sealed, and delivered in the presence of Louis A. Wagner.'

"This last-mentioned instrument was signed by the said Walli Brown in the presence of the said Louis A. Wagner, and subjoined thereto is an acknowledgment in the following language:

" 'State of New York, City and County of New York, ss.: On this 16th day of June, 1876, before me personally came Walli Brown, widow, to me known and known to me to be the person described in and who executed the foregoing release of dower, and to me acknowledged that she executed the same.
            " 'Louis A. Wagner, Notary Public, Kings Co., N. Y.'

"Such instruments so executed by the said Philip Michel and the said John F. Miller and by the said Walli Brown were recorded together in the office of the register of the city and county of New York, on June 17, 1876, in Liber 1380 of conveyances, at page 265.

"(9) There is not on record any other instrument executed or purporting to be executed by Walli Goetz, or Walli Brown, or Walli Goetz Brown, relating to the title to the premises in question, other than the instrument referred to in the foregoing paragraph of these findings, and Walli Goetz, or Walli Brown, or Walli Goetz Brown, never executed or delivered any other instrument relating to the title to the premises in question. The only attempt of Walli Brown, or Walli Goetz, or Walli Goetz Brown, to exercise any power, right, or estate that she had or could have under the aforesaid will of Adolphus Brown, deceased, as aforesaid, is contained in the aforesaid instrument of Walli Brown, which is set forth in the foregoing paragraph of these findings.

"(10) That Christina Bitter, formerly Christina Brown, one of the children and heirs at law of the said Adolphus Brown, and Henry A. Bitter, her husband, executed, acknowledged, and delivered to the said Felix Brown a

81 N.Y.S.—5

certain deed bearing date the 24th day of March, 1880, and which deed was recorded in the office of the register of the city and county of New York, on April 14, 1880, in Liber 1533 of Conveyances, at page 347, and purported to convey all the right, title, and interest which the said Christina Bitter and Henry A. Bitter had in the premises in question herein. That Rosa Watteyne, formerly Rosa Brown, one of the children and heirs at law of the said Adolphus Brown, and Henry Watteyne, her husband, executed, acknowledged, and delivered to the said Felix Brown a certain deed bearing date the 3d day of April, 1880, and which deed was recorded in the office of the register of the city and county of New York, on April 14th, 1880, in Liber 1533 of Conveyances, at page 346, and purported to convey all the right, title, and interest which the said Rosa Watteyne and Henry Watteyne had in the premises in question herein. That Auguste Fraenznick, formerly Auguste Brown, one of the children and heirs at law of the said Adolphus Brown, and Ferdinand Fraenznick, her husband, executed, acknowledged, and delivered to the said Felix Brown a certain deed bearing date the 9th day of April, 1880, and which deed was recorded in the office of the register of the city and county of New York, on April 14, 1880, in Liber 1533 of Conveyances, at page 344, and purported to convey all the right, title, and interest which the said Auguste Fraenznick and Ferdinand Fraenznick had in the premises in question herein.

"(11) That on September 13, 1884, Felix Brown and Ernestine Brown, his wife, executed and delivered to the defendant a deed bearing date the said 13th day of September, 1884, and duly acknowledged on the 25th day of September, 1884, and which deed was recorded in the office of the register of the city and county of New York on September 26, 1884, in Liber 1822 of Conveyances, at page 311, and which deed purports to convey the premises in fee simple to the said defendant.

"(12) That on January 19, 1899, Julia Bain, formerly Julia Goetz, a daughter of Walli Goetz Brown, and Robert B. Bain, her husband, conveyed, released, and quitclaimed all their interest in the premises in question to the defendant, by deed bearing date the said 19th day of January, 1899, and recorded in the office of the register of the county of New York on October 24, 1899, in Block Series of Conveyances, section 2, Liber 72, page 402, and indexed under Block No. 328 on the land map of the city of New York. This last-mentioned conveyance was not tendered to the plaintiff until the first trial of this action, on April 25, 1900.

"(13) That the defendant never received from said Max Goetz, or from Julia Virginia Goetz, his only child and heir at law, or from Emma Goetz, the widow of the said Max Goetz, any conveyance purporting to quitclaim, release, or convey any interest that the said Max Goetz or the said Julia Virginia Goetz or the said Emma Goetz had in the premises in question, nor was any such conveyance ever made, nor did any such share or interest ever pass to the defendant. That said Emma Goetz, the widow, and said Julia Virginia Goetz, the daughter, of Max Goetz, are still living.

"(14) That the plaintiff has been put to costs and disbursements in and about the examination of the title to said premises in the sum of three hundred and nine and $^{48}/_{100}$ dollars ($309.48). That the interest on said sum to the date of the trial herein amounts to the sum of sixty-six and $^{84}/_{100}$ dollars ($66.84). That the interest on the sum of one thousand dollars ($1,000), the deposit made by the plaintiff on signing the said contract between the plaintiff and defendant, from the date of said deposit to the date of the trial herein, amounts to the sum of two hundred and twenty-four dollars ($224). The said sum of $1,000, and the said sum of $224. the interest thereon, and the said sum of $309.48, and the said sum of $66.84, the interest thereon, in all amount in the aggregate to the sum of $1,600.32.

"And as conclusions of law I find:

"(1) That the defendant has not now, and did not have on the said 27th day of February, 1899, a good and marketable title to the premises in question, and has not, and did not have on the said 27th day of February, 1899, title to the said premises in fee simple, free and clear of all incumbrances except the said mortgages, aggregating $7,000, and the monthly tenancies.

"(2) That the aforesaid instrument executed by the said Walli Goetz Brown was not an execution of the power of sale contained in the said will, but

only a conveyance of her dower in two-thirds and her life estate in the one-third of the premises in question.

"(3) That upon the death of the said Adolphus Brown the said Walli Brown, his widow, had, under the aforesaid will, a life estate in one-third of said decedent's realty by virtue of said will, and also had a power of sale under said will, and also her dower right in decedent's realty.

"(4) That irrespective of the power or right of disposition of sale under the will of Adolphus Brown aforesaid, held by the said Walli Brown, his widow, the said Walli Brown had a separate, independent, and distinct interest or estate in the realty referred to in said will.

"(5) That the instrument signed by Walli Brown aforesaid, dated June ——, 1876, does not refer by its terms to the power of sale under such will, nor does it recite the same.

"(6) That the instrument signed by Walli Brown aforesaid, dated June ——, 1876, is not a valid execution of the power of sale given to Walli Brown under the aforesaid will of Adolphus Brown, deceased.

"(7) That the dower right of Walli Brown in said realty was a legal and independent interest, separate and apart from her right of disposition or power of sale under Adolphus Brown's will.

"(8) That Walli Brown's life estate was a legal and independent interest, separate and apart from her right of disposition or power of sale under Adolphus Brown's will.

"(9) That Max Goetz, the said child of the said Walli Goetz Brown, at the time of the death of the said Adolphus Brown, became, under the provisions of the last will and testament of the said Adolphus Brown, vested with a one undivided half part of the remainder in two-ninths of the said premises, after the expiration of the life estate in one-third of said premises of his said mother, the said Walli Goetz Brown; and as the defendant has never acquired the said interest of the said Max Goetz, either from the said Max Goetz, or from his only child and heir at law, the said Julia Virginia Goetz, there is now outstanding a one undivided ninth part of said premises, to which the said defendant has not title.

"(10) The plaintiff should have judgment herein against the defendant for the sum of one thousand dollars ($1,000), being the amount deposited on the signing of the contract, and the interest thereon to the date of the trial herein, and the sum of three hundred and nine dollars and forty-eight cents ($309.48), the amount of the costs and expenses in and about the examination of the title to the said premises, and the interest thereon to the date of the trial herein, together with the costs of this action to be taxed, and an extra allowance of the sum of eighty dollars ($80), which is hereby awarded to her, and that the same be declared to be a lien upon the defendant's interest in the premises hereinbefore described, and that the said premises, or such part thereof as is sufficient to discharge the said lien of the plaintiff and the expenses of the sale, and which may be sold separately without material injury to the parties interested, be sold at public auction, pursuant to law; and if the proceeds of such sale be insufficient to pay the amount so found due to the plaintiff, with interest and costs aforesaid, that the plaintiff have judgment against the said defendant for such deficiency, and that the plaintiff have execution against the said defendant therefor, and I order and direct judgment accordingly.

E. W. S. Johnston, for appellant.

M. Esberg, for respondent.

PER CURIAM. Judgment affirmed, with costs, on the opinion of the court below.